JOSEPH B. GLICK, individually and as a representative of a class of participants and beneficiaries of the ThedaCare Retirement and 403(b) Savings Plan,

        Plaintiff,

        v.                  Case No. 20-C-1236

THEDACARE INC., et al.,

        Defendants.

## DECISION AND ORDER

Plaintiff Joseph B. Glick, a participant in the ThedaCare, Inc. Retirement and 403(b) Savings Plan (the Plan), brings this case as a proposed class action under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(2), against Defendants ThedaCare Inc. and the Board of Directors of ThedaCare Inc. Defendants filed a motion to dismiss Plaintiff's amended complaint on December 4, 2020. On September 30, 2021, the Court stayed and administratively closed the case pending the United States Supreme Court's decision in *Hughes v. Northwestern University*, No. 19-1401. The Supreme Court issued a decision in *Hughes* on January 24, 2022. 142 S. Ct. 737 (2022). That same day, the Court lifted the stay and invited the parties to submit simultaneous supplemental briefing in light of the Supreme Court's decision. The parties submitted supplemental briefs on February 7, 2022. The motion to dismiss is now ready for decision. For the following reasons, Defendants' motion to dismiss will be partially granted.

## LEGAL STANDARD

A motion to dismiss "tests the sufficiency of the complaint" to state a claim upon which relief can be granted. *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 878 (7th Cir. 2012); *see also* Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss under Rule 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all inferences in the light most favorable to the non-moving party. *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020). Rule 8 mandates that a complaint need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff's short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a plaintiff is not required to plead detailed factual allegations, it must plead "more than labels and conclusions." *Id.* A simple, "formulaic recitation of the elements of a cause of action will not do." *Id.* Instead, a claim must be plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

## ALLEGATIONS CONTAINED IN THE AMENDED COMPLAINT

On September 4, 2018, Plaintiff was hired as a surgical technician by ThedaCare. Am. Compl. ¶ 12, Dkt. No. 14. ThedaCare terminated Plaintiff's employment on July 27, 2020. *Id.* ¶ 13. ThedaCare is both the plan sponsor and plan administrator of the ThedaCare Retirement and 403(b) Savings Plan (the Plan). *Id.* ¶ 21. The Plan is a "defined contribution" pension plan under 29 U.S.C. § 1102(2)(A) and 1002(34), meaning that ThedaCare's contribution to the payment of plan costs is guaranteed but the pension benefits are not. *Id.* ¶ 25. The Plan has approximately $612,000,000 in assets and over 7,900 participants. *Id.* ¶ 67.

Plaintiff claims that, at all relevant times, the Plan's fees were excessive when compared with other comparable 401(k) and 403(b) plans offered by other sponsors that had similar numbers of plan participants and similar amounts of money under management. *Id.* ¶ 68. Plaintiff also alleges that the excessive fees led to lower net returns than those that participants in comparable 401(k) and 403(b) plans enjoyed. *Id.* Plaintiff asserts that during the putative Class Period, which is defined as August 12, 2014, through the date of judgment, Defendants, as fiduciaries of the Plan, breached the duties owed to the Plan, to Plaintiff, and to all other plan participants by (1) failing to objectively and adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent, in terms of cost; (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories; (3) failing to monitor the recordkeeping and administration fees paid by the Plan to ensure that they were reasonable and, as a result, authorizing the Plan to pay objectively unreasonable and excessive recordkeeping and administration fees, relative to the recordkeeping and administration services received; and (4) failing to adequately disclose fees associated with the Plan to plan participants. *Id.* ¶ 69. Defendants' recordkeeper during the Class Period was Transamerica Retirement Solutions, which Plaintiff alleges is "well known as a high cost recordkeeper and administrator and tends to have platforms that encourage higher fee funds." *Id.* ¶ 82.

Plaintiff alleges that Defendants failed to regularly monitor the Plan's recordkeeping and administration fees paid to covered service providers, including Transamerica. *Id.* ¶ 90. He asserts that Defendants failed to regularly solicit quotes and/or competitive bids from covered service providers in order to avoid paying unreasonable fees for recordkeeping and administration services and failed to ensure that the Plan paid no more than a competitive reasonable fee for recordkeeping and administration services. *Id.* ¶¶ 92–93. He claims that the Plan's recordkeeping and

3

administration service fees were significantly higher than they would have been had Defendants engaged in these processes or, to the extent there was a process in place that Defendants followed, it was done so ineffectively given the objectively unreasonable fees paid for recordkeeping and administration services. *Id.* ¶ 98. Plaintiff alleges that, from the years 2014 through 2019, the Plan had, on average, 7,964 participants and paid an average effective annual recordkeeping and administration fee of at least approximately $709,108, which equates to an average of at least approximately $89 per participant. *Id.* ¶ 100. He claims that, for the same time period, the annual recordkeeping and administration fees paid by other plans of similar sizes with similar amounts of money under management ranged from $20 to $58 per participant. *Id.* ¶ 102. Plaintiff alleges that, because Defendants did not act in the best interests of the Plan, the Plan cost its participants a total minimum amount of approximately $2,343,246 in unreasonable and excessive recordkeeping and administration fees. *Id.* ¶ 108.

In addition, Plaintiff alleges that Defendants did not engage in an objectively reasonable process when selecting funds for the Plan. *Id.* ¶ 133. Plaintiff claims that Defendants chose an investment option that effectively charges a fee that is 18% higher than an alternative investment option that provides the identical services of the same portfolio manager. *Id.* ¶ 136. He alleges that, had Defendants acted in the best interests of the Plan's participants, Defendants would have selected funds with lower "net investment expense to retirement plans" than those funds actually selected by Defendants. *Id.* ¶ 139. Plaintiff claims that, during the entirety of the Class Period, Defendants did not conduct an impartial and objectively reasonable review of the Plan's investments on at least a quarterly basis; did not identify the prudent share classes available to the Plan; did not transfer the Plan's investments into these prudent share classes at the earliest opportunity; and actually transferred participants' assets from the share classes that provide the lowest "net investment expense to retirement plans" to more expensive share classes, all to the

4

substantial detriment of Plaintiff and the plan participants. *Id.* ¶ 162. Plaintiff claims that, during the Class Period, he had no knowledge of Defendants' process for selecting investments and regularly monitoring them to ensure they remained prudent. *Id.* ¶ 183. He alleges that, had Defendants chosen other investment options, the Plan's participants would have received the exact same portfolio management services at a lower cost. *Id.* ¶ 188. Plaintiff claims that the expense ratios of the Plan's investment options between the years 2014 and 2020 were more expensive by significant multiples of comparable passively managed and actively managed alternative funds in the same investment style. *Id.* ¶ 190. He asserts that, because Defendants failed to act in the best interests of the plan participants by engaging in an objectively reasonable investigation process when selecting its investments, Defendants caused objectively unreasonable and unnecessary losses to Plaintiff and the plan participants in the amount of approximately $8,793,074 through 2019. *Id.* ¶ 193.

Plaintiff alleges that ThedaCare did not have a viable methodology for monitoring the costs or performance of the Prudential GIC. He asserts that the Prudential GIC consistently charged ThedaCare employees 157 basis points more and returned 157 basis points less than the very same type of fund offered by Prudential to other similarly situated retirement plans. *Id.* ¶ 196. Plaintiff claims that this difference is the excess spread fees that ThedaCare failed to monitor and redress. *Id.* ¶ 197. He asserts that, on the basis of the excessive spread fees alone, the Prudential stable value fund was an imprudent investment which should have been removed from the Plan. *Id.* ¶ 203. He also alleges that the Prudential GIC is not diversified. *Id.* ¶ 205.

Plaintiff further alleges that Defendants caused the plan participants to pay excessive Managed Advice service fees. *Id.* ¶ 209. He claims that Defendants allowed Transamerica to charge plan participants who used the Managed Advice service an annual fee of 0.45% of the plan participant's account balance regardless of the account balance of each individual participant. *Id.*

5

¶ 223. Plaintiff alleges that the plan participants are paying fee rates greater than participants in other large defined contribution plans. *Id.* ¶ 225. He asserts that the fee rates paid by the plan participants for the Managed Advice service were excessive and not reasonable given the Plan's size and negotiating power. *Id.* ¶ 229. Plaintiff alleges that Defendants also selected an additional managed account service offering called PortfolioXpress. *Id.* ¶ 233. He claims, upon information and belief, that Defendants did not follow a prudent and informed decision process to warrant the selection of the Managed Advice service or the PortfolioXpress service by making an explicit and informed finding that plan participants using either service were more likely than not to achieve superior retirement outcomes than could be achieved by using fee plan design best practices and target date funds. *Id.* ¶ 236. Plaintiff alleges Defendants did not prudently evaluate the incremental value provided by the Plan's Managed Advice service and the PortfolioXpress service to determine that the fees were warranted. *Id.* ¶ 238.

Plaintiff claims Defendants failed to properly disclose fees charged to plan participants in their quarterly statements and 404a-5 participant fee disclosure documents. *Id.* ¶ 243. He alleges, upon information and belief, that Defendants failed to disclose the revenue sharing rates of each investment option to the participants. *Id.* ¶ 245. Plaintiff asserts that, as a result, the plan participants were unable to make informed decisions with regard to the management of their individual accounts. *Id.* ¶ 250.

Plaintiff asserts six claims for relief: breaches of duties of loyalty and prudence regarding recordkeeping and administration fees (Count I); breaches of duties of loyalty and prudence regarding managed account service fees (Count II); breaches of duties of loyalty and prudence regarding investment management fees (Count III); failure to adequately monitor other fiduciaries regarding recordkeeping and administration fees (Count IV); failure to adequately monitor other

fiduciaries regarding managed account services fees (Count V); and failure to adequately monitor other fiduciaries regarding investment management fees (Count VI).

## ANALYSIS

A. **Article III Standing**

Defendants assert that Plaintiff lacks Article III standing because he does not allege that he invested in any of the allegedly imprudent investment options or paid any of the fees about which he complains. Article III of the United States Constitution limits the jurisdiction of federal courts to actual "cases" and "controversies" brought by litigants who demonstrate standing. *Garcia v. SigmaTron Int'l, Inc.*, 986 F.3d 1058, 1063 (7th Cir. 2021). "The familiar 'triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement." *Id.* at 1064 (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103–04 (1998)). The plaintiff bears the burden of establishing each element. *Id.* (citation omitted). "There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Therefore, a plaintiff who raises multiple claims "must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

Citing the Supreme Court's decision in *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615 (2020), Defendants argue that Plaintiff lacks standing to assert claims related to plan options in which he did not invest because he can only seek redress for injuries that he personally experienced. In *Thole*, the plaintiffs, who were participants in a defined-benefit plan, filed a putative class action alleging the defendants breached their duties of loyalty and prudence by mismanaging the plan and poorly investing the plan's assets. *Id.* at 1618. The Supreme Court held that the plaintiffs lacked Article III standing to maintain their suit because, as defined-benefit participants, the plaintiffs had been paid "all of their monthly benefit payments" and were "legally and contractually entitled to receive those same monthly payments for the rest of their lives." *Id.* The Court

explained that the plaintiffs did not show that they had a "concrete stake" in the lawsuit because, win or lose, the plaintiffs "would still receive the exact same monthly benefits that they [were] already slated to receive." *Id.* The Court also rejected the plaintiffs' assertion that they had standing as representatives of the plan itself, noting that the plaintiffs needed to meet their own Article III standing requirements in order to claim the interests of others. *Id.* at 1620.

Defendants assert that *Thole* applies to the facts here. But the Plan in this case is a defined contribution plan, not a defined benefit plan. The Supreme Court explained that it was "[o]f decisive importance" that the case involved a "defined-benefit plan, not a defined-contribution plan," because the plaintiffs received a fixed payment that did "not fluctuate with the value of the plan or because of . . . [any] investment decisions." *Id.* In this case, Plaintiff has satisfied the requirements of Article III standing by alleging that he suffered objectively unreasonable and unnecessary monetary losses through injuries to the Plan's assets unrelated to specific funds. Plaintiff has a "concrete stake" in the lawsuit because if Plaintiff wins his suit, he alleges that his account balance will be greater based on the excessive fees and expenses returned to his individual account by Defendants. *Id.* Because Plaintiff has alleged his own injury in fact, he has standing to assert claims on behalf of other affected plan participants. Accordingly, Plaintiff has standing to assert all of the claims brought in this action.

## B. Breach of Fiduciary Duty

Plaintiff alleges Defendants breached their fiduciary duties by causing the Plan to pay excessive recordkeeping costs, failing to retain the least costly share class of each fund, retaining high-cost funds, failing to disclose revenue-sharing information to participants, and failing to follow a prudent process in providing managed account services. A fiduciary must "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries; and . . . defraying

8

Case 1:20-cv-01236-WCG   Filed 08/25/22   Page 8 of 17   Document 33

reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). To state a claim for breach of fiduciary duty under ERISA, "the plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) (quoting *Kenseth v. Dean Health Plan, Inc.*, 610 F.3d 452, 464 (7th Cir. 2010)). "In order to assess the prudence of the fiduciary's actions, they must be evaluated in terms of both procedural regularity and substantive reasonableness." *Id.* (citing *Fish v. GreatBanc Trust Co.*, 749 F.3d 671, 680 (7th Cir. 2014)).

A motion to dismiss, in the ERISA context, is an "important mechanism for weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014); *see also Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 718 (2d Cir. 2013) (noting that "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests about its methods and knowledge at the relevant times"). ERISA "represents a careful balancing between ensuring fair and prompt enforcement of rights under a plan and the encouragement of the creation of such plans." *Fifth Third Bancorp*, 573 U.S. at 424 (internal quotation marks and citations omitted). "Nothing in ERISA requires employers to establish employee benefits plans. Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). The Supreme Court has recognized that Congress wanted to avoid creating "a system that is so complex that administrative costs, or litigation expenses, unduly discourage employers from offering welfare benefits plans in the first place." *Varity Corp v. Howe*, 516 U.S. 489, 497 (1996). But because ERISA plaintiffs generally do not have "inside information" regarding the fiduciary's process, the Seventh Circuit has recognized that "an ERISA plaintiff

9

alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story." *Allen*, 835 F.3d at 678 (citation omitted).

To support their motion, Defendants rely heavily on the Seventh Circuit's decision in *Divane v. Northwestern University*, 953 F.3d 980, 991 (7th Cir. 2020). But the judgment in that case was recently vacated by the Supreme Court and remanded to the Court of Appeals. *See Hughes v. Northwestern University*, 142 S. Ct. 737 (2022). In *Hughes*, the plaintiffs alleged that the defendants violated their duty of prudence by offering needlessly expensive investment options and failing to solicit quotes or competitive bids for recordkeeping services. The Seventh Circuit held that the plaintiffs failed to state a claim because the plan offered a mix of low-cost index funds, including the types of funds the plaintiffs wanted. Because the plaintiffs' preferred type of investments were available, the court reasoned, the plaintiffs could not complain about the flaws in the other options. The Seventh Circuit also found that the amount of recordkeeping fees paid were within the participants' control, since "'plan participants had options to keep the expense ratios (and, therefore, recordkeeping expenses) low.'" 142 S. Ct. at 742 (quoting *Divane*, 953 F.3d at 991).

The Supreme Court rejected the argument that the availability of plan options eliminated any concern that certain plan options were imprudent. The Court explained that the Seventh Circuit's holding "is inconsistent with the context-specific inquiry that ERISA requires and fails to take into account respondents' duty to monitor all plan investments and remove any imprudent ones." *Id.* at 740 (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015)). The Court remanded the case so that the lower court could "reevaluate the allegations as a whole" by considering whether the plaintiffs "have plausibly alleged a violation of the duty of prudence as articulated in *Tibble*, applying the pleading standard discussed in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Id.* at 742. The Court noted that "[b]ecause

the content of the duty of prudence turns on the circumstances prevailing at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *Id.* (internal quotation marks, citations, and alterations omitted). With these considerations in mind, the Court now turns to Plaintiff's allegations.

### 1. Recordkeeping Fees

Plaintiff claims that Defendants breached their fiduciary duties by causing the Plan to pay excessive recordkeeping fees. He alleges that Defendants did not follow a prudent process because they did not question the Plan's recordkeeper, Transamerica, or put recordkeeping services out to some form of competitive bidding on a regular basis to ensure that plan administrative expenses were reasonable. Am. Compl. ¶¶ 88–98. Plaintiff alleges that, from 2014 to 2019, the Plan had on average 7,964 participants and paid an average effective annual recordkeeping and administration fee of at least $709,108, which equates to an average of approximately $89 per participant. *Id.* ¶ 100. He maintains that, during the same time period, the annual recordkeeping and administration fees paid by other similarly sized plans with similar amounts of money under management ranged from $20 to $58. *Id.* ¶¶ 101–02. Plaintiff alleges, based on this information, that a prudent plan fiduciary would have paid on average an effective annual recordkeeping and administration fee of approximately $40 per participant. *Id.* ¶ 104. Plaintiff asserts that the "market for defined contribution recordkeeping services is highly competitive," particularly for a plan like Defendants', which has more participants and assets than 99.7% of the defined contribution plans in the United States that filed 5500 forms. *Id.* ¶¶ 27, 38. He claims that, because Defendants did not regularly solicit competitive bids to ensure that the fees paid were reasonable, despite the Plan's size and the alleged ease of which to do so, the Plan cost its participants a total minimum amount of $2,343,246 in unreasonable and excessive recordkeeping and administration fees. *Id.* ¶ 108.

11

Case 1:20-cv-01236-WCG   Filed 08/25/22   Page 11 of 17   Document 33

Defendants assert that Plaintiff's allegations do not plausibly state a claim because they do not provide a factual basis to determine whether Defendants used an imprudent process for reviewing and monitoring the Plan's recordkeeping arrangement with Transamerica. They argue that the fees are far below what qualifies as "excessive" to support an inference of imprudence, as the fees here are beneath the low end of the range of fees that the Seventh Circuit has found to be reasonable and that Plaintiff only offers a select group of "cherry-picked" competitors without discussing the services they provide. Defs.' Br. at 26–27, Dkt. No. 18 (citing *Divane*, 953 F.3d at 984). As an initial matter, the Court must look to the process Defendants used, rather than the outcome of the process, to determine if it is reasonable. *Fish*, 749 F.3d at 680. Plaintiff alleges that Defendants' process is imprudent because Defendants should have leveraged the Plan's size to solicit quotes and competitive bids for lower recordkeeping fees. To support his allegations, he has cited examples of the fees other allegedly comparable plans paid and has identified less expensive, alternative recordkeepers that would have accepted a lower recordkeeper and administration fee than was paid to Transamerica to perform the same level of services. *See* Am. Compl. ¶¶ 36, 101, 111, 113. While "courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise," *Hughes*, 142 S. Ct. at 742, at this stage, the amended complaint plausibly alleges that Defendants' failure to solicit bids and negotiate for reasonable fees was imprudent.

**2. High-Cost Funds and Stable Value Investments**

Plaintiff alleges Defendants breached their fiduciary duty by retaining high-cost actively managed investments. Am. Compl. ¶ 190. He also asserts that Defendants breached their fiduciary duty by offering the Prudential GIC, a stable value investment, because it had excessive spread fees and lack of diversification. *Id.* ¶¶ 196–208. Plaintiff contends that Defendants should have selected the less expensive "Benchmark GIC." In their motion, Defendants rely on *Divane* for the

12

proposition that a plaintiff cannot establish imprudence when the plan offers a "wide range of investment options and fees." 953 F.3d at 992 (citing *Loomis v. Exelon Corp.*, 658 F.3d 667, 673–74 (7th Cir. 2011); *Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009)). While Defendants concede that the Supreme Court's decision in *Hughes* renders this argument moot, they argue that Plaintiff's claim remains implausible because the amended complaint does not contain any allegations regarding the process actually used to administer the Plan or of the particular fund's actual investment performance. Dkt. No. 29 at 6.

Plaintiff does not generally oppose actively managed funds; instead, he maintains that, although actively managed funds can be part of the mix of investments of a plan if a prudent process has been followed in selecting them, Defendants breached their fiduciary duty by failing to make a specific and informed finding regarding the cost of the investment options in the Plan. Am. Compl. ¶¶ 124–25. Plaintiff alleges that the fees charged were up to 637% more expensive than the fees for comparable institutional mutual funds that were used by other similar plans. *Id.* ¶ 176. Although Plaintiff has provided comparative tables to suggest that Defendants engaged in an imprudent process when selecting those investments, Plaintiff is not suggesting that the difference in the cost alone creates a cause of action. The difference in cost, however, does raise an inference that Defendants engaged in an imprudent process when selecting those investments by failing to consider materially similar and less expensive alternatives. *Id.* ¶¶ 170, 190. Therefore, Plaintiff has stated a claim that Defendants breached their fiduciary duty by retaining high-cost actively managed investments and offering the Prudential GIC without undertaking an appropriate process.

### 3. Share Class

Plaintiff alleges Defendants breached their duty of prudence by failing to retain low-cost share classes of nine mutual funds for the Plan, when such share classes were offered to other

investors. Am. Compl. ¶¶ 126–64. Plaintiff's claim of imprudence is based on the novel "net investment expense to retirement plans" theory of liability. Pl.'s Resp. Br. at 20, Dkt. No. 19. Plaintiff alleges that a prudent plan fiduciary must ensure that "the Plan selects the share class that provides the greatest benefit to plan participants given the institutional advantages provided to retirement plans in relation to retail investors." Am. Compl. ¶ 128. The "net investment expense to retirement plans," Plaintiff explains, is the "share class that gives plan participants access to the portfolio managers at the lowest net fee for the services of the portfolio manager." *Id.* Even though the Seventh Circuit has not addressed imprudence based on a net investment expense to retirement plans theory (primarily because it appears to be a concept created by Plaintiff), the crux of Plaintiff's argument is that Defendants should have selected share classes that would have cost participants less. Plaintiff maintains that the lowest net fee is always the prudent choice and that Defendants could have selected share classes that would have cost participants less if they had utilized a prudent process for doing so.

Defendants assert that Plaintiff's criticism of the share classes of certain investments fails to plausibly establish imprudence. They argue that fiduciaries are not required to select the least expensive investment, share class or otherwise, and that cost is just one factor among many that prudent fiduciaries must consider when selecting investments. While ERISA does not require a fiduciary to offer the cheapest possible fund, *see Hecker*, 556 F.3d at 586, ERISA fiduciaries have a duty to evaluate costs and expenses when selecting investments as well as a continuing duty to monitor investments and remove imprudent ones. *Tibble*, 575 U.S. at 530. Plaintiff contends that there is no difference between the share classes other than cost and that the funds hold identical investments and have the same portfolio manager. He asserts that there is "no reason for a prudent fiduciary to choose an investment option that effectively charges a fee that is 18% higher than an alternative investment option that provides the identical services of the same portfolio manager."

14

Am. Compl. ¶ 136. It is plausible to infer from Plaintiff's allegations that Defendants breached the duty of prudence by failing to retain low-cost share classes of nine mutual funds for the Plan.

4. **Managed Account Services**

Plaintiff alleges that Defendants failed to follow a prudent process in providing managed account services through Transamerica and that Defendants paid an objectively unreasonable amount for Transamerica managed account services, namely the Managed Advice and the PortfolioXpress services. Am. Compl. ¶¶ 209–40. Defendants assert that Plaintiff cannot state a claim by merely alleging in conclusory fashion that the Plan's managed account services, which is a completely optional service, did not feature the lowest possible fees available in the marketplace. Defendant maintains that, if plan participants did not want to utilize the optional services, they were not required to. To support his allegations that Defendants charged too much for the managed account services, Plaintiff has identified the fees associated with the managed account services provided by Transamerica compared to five other plans. Am. Compl. ¶¶ 224–27. He asserts that, when comparing the fee rates paid by similarly situated plans for materially identical managed account services, Defendants paid an objectively unreasonable amount for Transamerica managed account services. Although Defendants dispute whether the alternative services are appropriate comparisons, at this stage, Plaintiff has asserted allegations from which it can be inferred that Defendants followed an imprudent process in selecting Transamerica to provide managed account services.

5. **Disclosure of Revenue-Sharing Arrangement**

Plaintiff alleges that Defendants failed to properly disclose revenue sharing information to participants. But the Seventh Circuit has recognized that fiduciaries are not required to disclose "information about the revenue-sharing arrangement." *Hecker*, 556 F.3d at 586. Indeed, all that matters is the total fee amount, not how those fees are allocated and distributed. *Id.* "The total

15

fee, not the internal, post-collection distribution of the fee, is the critical figure for someone interested in the cost of including a certain investment in her portfolio and the net value of that investment." *Id.* Although Plaintiff asserts that "citations to *Hecker* for disclosure purposes are both outdated and completely irrelevant," Pl.'s Br. at 23, *Hecker* remains the law of this circuit which, of course, is binding on this Court. When given the chance to overrule *Hecker*, the Seventh Circuit declined. *See Loomis*, 658 F.3d at 670 ("Plaintiffs do not persuade us to overrule *Hecker*."). Therefore, Defendants are not required to disclose fees charged or credited to the Plan investments with the level of detail sought by Plaintiff.

### C. Remaining Claims

Plaintiff asserts that Defendants breached ERISA's duty of loyalty, which requires fiduciaries to act solely in the interest of the participants and beneficiaries. 29 U.S.C. § 1104(a)(1). Plaintiff's breach of the duty of loyalty claim is based on the same allegations as the breach of fiduciary duty claim. Plaintiffs must do more than recast allegations of purported breaches of fiduciary duty as disloyal acts. *See Martin v. CareerBuilder, LLC*, No. 19-cv-6463, 2020 WL 3578022, at *6 (N.D. Ill. July 1, 2020) (collecting cases). The Amended Complaint does not contain any allegations beyond those pertaining to an alleged breach of fiduciary duty; therefore, Plaintiff's breach of the duty of loyalty claims must be dismissed.

Plaintiff also alleges that Defendants breached their duty to monitor. Plaintiff's breach of the duty to monitor claim is derivative of the breach of fiduciary duty claim. Because Plaintiff has stated claims for breach of fiduciary duty with respect to the recordkeeping fees paid, managed account services fees, and investment management fees, he has also stated a claim that Defendants breached their duty to monitor.

## CONCLUSION

For these reasons, Defendants' motion to dismiss (Dkt. No. 17) is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted with respect to Plaintiff's breach of fiduciary duty claim regarding Defendants' failure to properly disclose revenue sharing information to participants and breach of the duty of loyalty claims, and those claims are dismissed. The motion is denied in all other respects. The Clerk is directed to set the matter on the Court's calendar for a Rule 16 telephonic scheduling conference.

**SO ORDERED** at Green Bay, Wisconsin this 25th day of August, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge