UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JOSEPH B. GLICK,
*individually, and as representative of a class of participants and beneficiaries of the ThedaCare Retirement and 403(b) Savings Plan,*

    Plaintiff,

    v.                                       Case No. 20-CV-1236-WCG-SCD

THEDACARE, INC.,

THE BOARD OF DIRECTORS OF
THEDACARE, INC., and

JOHN DOES 1-30,

    Defendants.

---

### REPORT AND RECOMMENDATION

---

Joseph B. Glick, a participant in the ThedaCare, Inc. Retirement and 403(b) Savings Plan, has filed a proposed class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461, against ThedaCare, Inc., the Board of Directors of ThedaCare, Inc., and John Does 1–30. United States District Judge William C. Griesbach has referred the case to me to address any motions. This report and recommendation addresses the defendants' motion for partial reconsideration of the court's decision on the defendants' motion to dismiss Glick's amended complaint. Based on a recent clarification of the law from the Seventh Circuit, I will recommend the court grant the motion for reconsideration, dismiss the amended complaint in its entirety, and permit Glick leave to file a second amended complaint.

## BACKGROUND

Glick filed this action August 2020. *See* ECF No. 1. In response to the defendants' motion to dismiss, Glick filed an amended complaint in October 2020, asserting six causes of action. *See* ECF No. 14. The first three causes of action assert that the defendants breached their duties of loyalty and prudence regarding recordkeeping and administration fees (Count I), managed account service fees (Count II), and investment management fees (Count III). The last three causes of action assert that the defendants failed to adequately monitor other fiduciaries with respect to the plan's recordkeeping fees (Count IV), service fees (Count V), and investment fees (Count VI).

The defendants moved to dismiss the amended complaint under Rule 12(b)(6), arguing that each of Glick's claims failed to state a claim according to the pleading standards outlined in *Divane v. Northwestern University*, 953 F.3d 980 (7th Cir. 2020), *Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009), and *Loomis v. Exelon Corp.*, 658 F.3d 667 (7th Cir. 2011). While that motion was pending, this court issued a decision in *Albert v. Oshkosh Corp.*, No. 20-C-901, 2021 WL 3932029, 2021 U.S. Dist. LEXIS 166750 (E.D. Wis. Sept. 2, 2021), dismissing similar ERISA claims. A few weeks later, the court stayed this action because the Supreme Court granted certiorari in *Divane*. *See* ECF No. 26. In January 2022, the Supreme Court vacated *Divane* and remanded the matter to the Seventh Circuit for reconsideration. *See Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022).[1] This court then lifted the stay and invited supplemental briefing on the impact of the *Hughes* decision. *See* ECF No. 27.

On August 25, 2022, this court issued a decision and order granting in part and denying in part the defendants' motion to dismiss the amended complaint. *See* ECF No. 33.

---

[1] *Divane* is still pending before the Seventh Circuit on remand, with oral argument scheduled for November.

The court dismissed the duty of loyalty claims and the duty of prudence claims regarding the defendants' alleged failure to disclose certain information. The court, however, determined that the amended complaint plausibly alleged that the defendants breached the duty of prudence with respect to the plan's recordkeeping and administration fees, managed account service fees, and investment management fees. The court also declined to dismiss the derivative failure to monitor claims.

A few days later, the Seventh Circuit affirmed this court's dismissal in *Albert*. *See Albert v. Oshkosh Corp.*, 47 F.4th 750 (7th Cir. 2022). The defendants then sought reconsideration, arguing that *Albert* provides grounds to reconsider this court's motion to dismiss ruling. *See* ECF No. 39. Judge Griesbach subsequently referred the matter to me in accordance with 28 U.S.C. § 636(b)(1) to issue a report and recommendation concerning any motions that are filed. *See* ECF No. 42.

**LEGAL STANDARD**

District courts have broad discretion to revisit their interlocutory orders. *See Solis v. Current Dev. Corp.*, 557 F.3d 772, 780 (7th Cir. 2009) (citing *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571 (7th Cir. 2006)). "Under Federal Rule of Civil Procedure 54(b), 'any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *TL Constr. Mgmt., LLC v. City of Green Bay*, No. 19-C-1077, 2020 WL 7698374, 2020 U.S. Dist. LEXIS 242441, at *2 (E.D. Wis. Dec. 28, 2020) (quoting Fed. R. Civ. P. 54(b)). "A court has the power to revisit prior decisions of its own . . . in . . . circumstances such as where the initial decision was clearly erroneous and would work a

manifest injustice." *TL Constr. Mgmt*, 2020 U.S. Dist. LEXIS 242441, at *2 (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

Likewise, under the law of the case doctrine, a court may reconsider its prior ruling "if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *Birch Hill Real Estate, LLC v. Breslin*, No. 19-C-426, 2019 WL 4278505, 2019 U.S. Dist. LEXIS 154019, at *5 (E.D. Wis. Sept. 10, 2019) (quoting *Santamarina*, 466 F.3d at 571–72). In other words, the law of the case doctrine does not preclude reconsideration if the court "is convinced that [its prior decision] is clearly erroneous and would work a manifest injustice." *Birch Hill Real Estate*, 2019 U.S. Dist. LEXIS 154019, at *5 (quoting *Agostini v. Felton*, 521 U.S. 203, 236 (1997)). "Not to reconsider in such circumstances would condemn the parties to the unedifying prospect of continued litigation when they knew that a possibly critical ruling was in error and, unless it became moot in the course of the proceedings, would compel a reversal of the final judgment at the end of the case." *Birch Hill Real Estate*, 2019 U.S. Dist. LEXIS 154019, at *5 (quoting *Santamarina*, 466 F.3d at 572).

## DISCUSSION

The defendants seek reconsideration in light of *Albert*. According to the defendants, *Albert* clarified the pleading requirements for fiduciary-breach claims and makes clear that the court should dismiss Glick's remaining claims. Glick argues that *Albert* does not warrant giving the defendants a second bite at the apple because that decision did not alter ERISA pleading requirements. Alternatively, Glick maintains that the court's decision largely would remain the same under *Albert* and, to the extent it wouldn't, he should be permitted leave to submit a second amended complaint to supplement his factual allegations. The issue,

4

therefore, is whether the court's ruling on the defendants' motion to dismiss is clearly erroneous in light of *Albert*.

## I. Duty of Prudence Claims

Glick asserts that the defendants breached their duty of prudence with respect to recordkeeping and administration fees, managed account service fees, and investment management fees.

### A. Recordkeeping and Administration Fees (Count I)

Glick asserts that the defendants failed to regularly monitor the plan's recordkeeping and administration fees paid to covered service providers, including Transamerica Retirement Solutions. Specifically, Glick alleges that the defendants failed to regularly solicit quotes and/or competitive bids from covered service providers, resulting in the plan paying unreasonable fees for recordkeeping services. For support, Glick compares publicly available data for the plan with nineteen allegedly comparable plans that are supposedly prudent when it comes to recordkeeping fees. Based on that comparison, Glick alleges that the ThedaCare plan paid unreasonably excessive recordkeeping fees, costing its participants over $2 million.

In *Albert*, the Seventh Circuit affirmed the dismissal of a substantially similar recordkeeping claim. The court held that the recordkeeping claim failed "under [the] precedent that *Hughes* left untouched"—namely, that a failure to regularly solicit quotes or competitive bids from service providers does not, as a matter of law, breach the duty of prudence. *Albert*, 47 F.4th at 579–80 (citing *Divane*, 953 F.3d at 990–91). The court relied primarily on *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), a recent case in which the Sixth Circuit "held that an ERISA plaintiff failed to state a duty of prudence claim where the complaint 'failed to allege that the [recordkeeping] fees were excessive relative to the

5

services rendered.'" *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169). The Seventh Circuit further held that the complaint in *Albert* did not provide "'the kind of context that could move this claim from possibility to plausibility' under *Twombly*[2] and *Iqbal*[3]." *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169). Nevertheless, the court emphasized "that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss." *Albert*, 47 F.4th at 580 (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)).

Like the complaint in *Albert*, the amended complaint in this case does not provide the necessary context to support a plausible recordkeeping claim. *Compare* the amended complaint here, ECF No. 14 ¶¶ 88–114, *with* the amended complaint in *Albert*, 20cv901, ECF No. 20 ¶¶ 88–114. The amended complaint alleges in conclusory fashion that the recordkeeping fees were excessive relative to the services received. *See* ECF No. 14 ¶¶ 68, 69, 72, 74, 87, 111, 113. The amended complaint describes some of the services offered by recordkeepers—maintaining plan records, tracking participant account balances and investment elections, transaction processing, call center support, participant communications, and trust and custody services—and alleges that the plan here "received a standard package of [recordkeeping] services." *Id.* ¶ 36. Crucially, however, the amended complaint does not contain any allegations concerning the *specific services* performed by the comparator plans' recordkeepers or any allegations supporting a plausible inference that the plan's recordkeeping services were equivalent to those provided by the comparator plans, *see id.* ¶¶ 67–114. *See Smith*, 37 F.4th at 1169 (affirming the dismissal of a recordkeeping claim because the plaintiff

---

[2] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).
[3] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

6

failed to plead "that the services that [the plan's] fee covers are equivalent to those provided by the plans comprising the average in the industry publication that she cites"). Absent that context, the court is left with only a naked fee-to-fee comparison, which does not permit a reasonable inference that the defendants' process of managing the plan's recordkeeping fees was imprudent. *Albert* therefore makes clear that this court should dismiss Glick's recordkeeping claim.[4]

### B. Managed Account Service Fees (Count II)

Next, Glick asserts that the defendants failed to regularly monitor the plan's managed account service fees. Specifically, Glick alleges that the plan paid objectively unreasonable fees for two optional managed account services offered by Transamerica, the Managed Advice service and the PortfolioXpress service. For support, Glick compares the service fees paid by Transamerica to the service fees paid by five other large defined contribution plans. Based on that comparison, Glick alleges that the ThedaCare plan paid higher fees for virtually identical services.

Although *Albert* did not involve a managed account service fee claim, it did address a duty of prudence claim regarding the fees paid to one of the plan's service providers. The plaintiff in *Albert* alleged that the plan was imprudent because it paid excessive service fees to its investment advisor. *See Albert*, 47 F.4th at 576. The plaintiff further alleged that the investment advisor did not provide any added value in comparison to the services offered by other service providers. *Id.* at 582. The court held that the complaint in that case failed to state a duty of prudence claim as to the fees the plan paid to the investment advisor because the

---

[4] It's conceivable that recordkeeping services are essentially fungible, meaning that there aren't meaningful differences in services provided by various companies. If that's true, an allegation to that effect, supported by specific data, might suffice under *Albert*.

7

complaint did not "provide any basis for comparison between the fees paid to [the investment advisor] and fees paid to other service providers." *Id.* (citing *Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 484 (8th Cir. 2020)).

Likewise, the amended complaint here does not provide a sound basis for comparison regarding the managed account service fees. The amended complaint alleges in conclusory fashion that the comparator plans were "similarly situated" and includes a table showing the fees those plans supposedly paid for "virtually and materially identical managed account services." ECF No. 14 ¶ 224. However, the amended complaint does not describe the *specific services* provided by the Managed Advice and the PortfolioXpress service providers or the service providers of the comparator plans. *See id.* ¶¶ 209–40. Moreover, the amended complaint does not contain *any* factual allegations showing that the plans are in fact similarly situated—it doesn't even list the number of participants or asset size of the comparator plans.

The amended complaint seems to suggest that all managed account service providers offer the same services. *See id.* ¶ 210 (citing The United States Government Accountability Office, *401(k) Plans: Improvements Can Be Made to Better Protect Participants in Managed Accounts*, at 14 (June 2014), *available at* https://www.gao.gov/assets/670/664391.pdf). But the government manual Glick relies upon for this point does not support this allegation. The full quote reads, "Managed account providers vary how they provide services, even though they generally offer the same basic service—initial and ongoing investment management of a 401(k) or 403(b) plan participant's account based on generally accepted industry methods." *401(k) Plans*, at 14. This passage indicates that, while the basic service may generally be the same, each managed account service provider may go about offering that service in a different

8

manner. And the variance in that process may, in some cases, explain the difference in fees charged.

In sum, *Albert* makes clear that the failure to provide a meaningful benchmark dooms a duty of prudence claim regarding the fees paid to a service provider. Because the amended complaint here does not provide a sound comparison between the managed account services offered by the plan and other similarly situated plans, this court should dismiss Glick's managed account service claim.

### C. Investment Management Fees (Count III)

Glick asserts that the defendants also failed to regularly monitor the plan's investment management fees. This claim includes three parts. First, Glick alleges that the defendants breached their duty of prudence by failing to retain low-cost share classes of nine mutual funds for the plan, when such share classes were offered to other investors. Glick concedes that this claim—which is based on a novel "net investment expense to retirement plans" theory—is untenable under *Albert*. *See* ECF No. 41 at 8 n.4. This court should therefore dismiss Glick's share class claim.

Second, Glick alleges that the defendants breached their duty of prudence by retaining high-cost actively managed investments. As with the recordkeeping claim, Glick compares the investment options the plan selected to twenty-two allegedly comparable and prudent alternative investment options. Based on that comparison, Glick alleges the plan's investment options were 637% more expensive than alternative options in the same asset category. He further alleges that the expense ratios of the plan's investment options were more expensive by significant multiples of comparable passively managed and actively managed alternative funds in the same investment style. According to Glick, the plan's participants would have

9

received the exact same portfolio management services at a lower cost if the defendants had chosen the other investment options. He alleges that the defendants' failure to consider materially similar but cheaper investment options cost its participants nearly $9 million.

In *Albert*, the Seventh Circuit affirmed the dismissal of a nearly identical investment management claim. The court noted that "[t]he fact that actively managed funds charge higher fees than passively managed funds is ordinarily not enough to state a claim because such funds may also provide higher returns." *Albert*, 47 F.4th at 581 (citing *Smith*, 37 F.4th at 1165). Again relying on the Sixth Circuit's decision in *Smith*, the Seventh Circuit determined that the Supreme Court's decision in *Hughes* "does not require a radically different approach to claims alleging excessive investment-management fees." *Albert*, 47 F.4th at 581–82. The court held that the plaintiff's allegations—that the defendants failed to consider materially similar and less expensive alternatives to the plan's investment options—were "threadbare" and that the complaint did not include "more detailed allegations providing a 'sound basis for comparison.'" *Id.* at 582 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).

Glick's investment management claim relating to the defendants' selection of high-cost investment options is indistinguishable from the investment management claim dismissed in *Albert*. *Compare* the amended complaint here, ECF No. 14 ¶¶ 165–95, *with* the amended complaint in *Albert*, 20cv901, ECF No. 20 ¶¶ 169–96. Like the plaintiff in *Albert*, Glick relies on tables comparing the plan's actively managed investment funds to cheaper alternatives. However, the difference in cost alone is not enough to support a duty of prudence claim, and the amended complaint does not contain any more detailed allegations raising an inference of imprudence based on the selection of investment options. Indeed, the amended complaint

10

here contains the same threadbare allegation deemed insufficient in *Albert*: "Defendants failed to consider materially similar but cheaper alternatives to the Plan's investment options." ECF No. 14 ¶ 190. *Albert* therefore makes clear that this court should dismiss Glick's high-cost investment management claim.

Third, Glick alleges that the defendants breached their duty of prudence by offering the Prudential GIC, a stable value investment, because it had excessive spread fees and lack of diversification. Glick contends that the defendants should have selected the less expensive but identical Benchmark GIC. According to Glick, the Prudential GIC cost over $3 million more than the Benchmark GIC in excess spread fees from 2014 to 2018, and on that basis alone it should have been removed from the plan.

Although *Albert* did not involve a stable value fund like Prudential GIC, its analysis concerning the high-cost actively managed funds suggests that this court should dismiss Glick's stable value claim. A stable value find, like a high-cost actively managed fund, is a specific plan investment option. In *Albert*, the Seventh Circuit reiterated that merely alleging that a plan failed to consider a materially similar and less expensive investment option is not enough to state a duty of prudence claim. The amended complaint in this case alleges merely that the Benchmark GIC was a materially similar and less expensive stable value fund than the Prudential GIC. Absent more detailed allegations comparing those investment options, the difference in cost does not raise an inference that the defendants engaged in an imprudent process when selecting the Prudential GIC stable value fund.

II. **Duty to Monitor Claims**

In Counts IV, V, and VI, Glick asserts that the defendants breached their duty to monitor other fiduciaries with respect to recordkeeping and administration fees, managed

11

account service fees, and investment management fees, respectively. Glick concedes that his duty to monitor claims are wholly derivative of his duty of prudence claims. *See* ECF No. 41 at 11. Because I recommend the court dismiss Glick's duty of prudence claims, I recommend the duty to monitor claims be dismissed as well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)).

### III.  Leave to Amend

Glick has requested leave to submit a second amended complaint if the court dismisses his amended complaint. The defendants oppose the request for leave to amend for two reasons. First, according to the defendants, the request does not comply with the court's local rules because Glick didn't attach a copy of his proposed second amended complaint or explain what specific changes he would make. Second, the defendants argue that leave should be denied because Glick chose to stand on his amended complaint in the face of *Albert* and the defendants' motion for reconsideration. The defendants contend that Glick's attempt to play both sides—insisting that his existing complaint is sufficient under *Albert* but also asking for a chance to amend if the court disagrees—creates undue delay and prejudice. Thus, they ask the court to deny Glick's request and dismiss his amended complaint with prejudice.

Because Glick already amended his complaint once as a matter of course, *see* Fed. R. Civ. P. 15(a)(1), he may amend his pleading again "only with the opposing party's written consent or the court's leave," Fed. R. Civ. P. 15(a)(2). "Leave to file 'shall be given freely when justice so requires.'" *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004) (quoting Fed. R. Civ. P. 15(a)). "Although leave to file a second amended complaint should be granted liberally, a district court may deny leave for several reasons including: 'undue delay, bad faith[,] or dilatory motive[,] . . . undue prejudice to the opposing party by virtue of

allowance of the amendment, [or] futility of amendment.'" *Dubicz*, 377 F.3d at 792 (quoting *Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir. 2002)). "Delay, standing alone, may prove an insufficient ground to warrant denial of leave to amend the complaint; rather, the degree of prejudice to the opposing party is a significant factor in determining whether the lateness of the request ought to bar filing." *Dubicz*, 377 F.3d at 792 (quoting *Park*, 297 F.3d at 613).

I conclude that Glick should be permitted leave to file a second amended complaint. Glick has sufficiently demonstrated that justice requires allowing him to file another amended complaint. Glick seeks leave to amend to respond to the *Albert* court's desire for further contextualization of his duty of prudence claims. Although he has not attached a copy of the proposed amendment to his filings, Glick indicates that he is ready and able to file to do so, noting that his lawyer has filed amendments in light of *Albert* in other, similar cases pending in this district. Based on the amended complaints in those cases, as well as Glick's statements here, it seems clear the proposed amendment would not include any new or additional claims. Rather, according to Glick, it would include additional factual allegations that the Seventh Circuit deemed lacking in *Albert*. It is reasonable given those unique circumstances to allow Glick to supplement his pleadings.

Moreover, the defendants have not identified any good reason why leave to amend should be denied. Glick did not waive his right to amend by attempting to first defeat the defendants' motion for reconsideration. In his response to that motion, Glick argues that *Albert* does not provide grounds to reconsider this court's prior ruling and that, even if it did, the current pleading survives under *Albert*. Although I disagree on both points, I don't believe he should be punished for pursuing that reasonable strategy—after all, lawyers regularly argue in the alternative. Thus, while allowing Glick to amend his pleadings again will delay this

matter, I do not find that delay to be undue or that the delay will significantly prejudice the defendants.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT** the defendants' motion for partial reconsideration, ECF No. 39; **GRANT** the defendants' motion to dismiss plaintiff's amended complaint in its entirety, ECF No. 17; and **GRANT** the plaintiff leave to file a second amended complaint.

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 27th day of October, 2022.

_____
STEPHEN C. DRIES
United States Magistrate Judge