UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**JOSEPH B. GLICK,**
*individually, and as representative of a class of participants and beneficiaries of the ThedaCare Retirement 403(b) Savings Plan,*

    Plaintiff,

    v.                                    Case No. 20-CV-1236-WCG-SCD

**THEDACARE, INC.** and

**THE BOARD OF DIRECTORS OF THEDACARE, INC.,**

    Defendants.

---

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

---

    Joseph B. Glick, a participant in the ThedaCare, Inc. Retirement and 403(b) Savings Plan, has filed a proposed class action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1101–1461, against ThedaCare, Inc., and the Board of Directors of ThedaCare, Inc (collectively, "ThedaCare"). United States District Judge William C. Griesbach has referred the case to me to address any motions. This report and recommendation addresses ThedaCare's motion to dismiss Glick's second amended complaint. For the following reasons, I recommend that the court grant the motion as it relates to Glick's managed account service fees and investment management fees claims and deny the motion concerning Glick's recordkeeping and administrative service fees claim.

## BACKGROUND

ThedaCare, Inc., a Wisconsin healthcare provider, offers its employees retirement benefits via the ThedaCare Retirement and 403(b) Savings Plan. 2d Am. Compl. ¶¶ 5, 25, ECF No. 47. The plan is a "defined contribution" pension plan under 29 U.S.C. § 1002(34), meaning that ThedaCare's contributions to the payment of plan costs is guaranteed but the pension benefits are not. *Id.* ¶ 28. ThedaCare is the plan sponsor and plan administrator of the plan. *Id.* ¶ 27. Transamerica Retirement Solutions has served as the plan's recordkeeper since 2011. *Id.* ¶ 6. Transamerica offers plan participants an optional service called Managed Advice. *Id.* As of 2021, the plan had over $790 million in assets and nearly 8,500 participants, making it one of the largest defined contribution plans in the nation. *Id.* ¶¶ 29–30.

Glick worked as a surgical technician for ThedaCare from September 2018 to July 2020 and is a participant in the plan. *Id.* ¶¶ 18–20. In August 2020, Glick filed suit individually and as representative of a putative class of plan participants and beneficiaries against ThedaCare, its board of directors, and unnamed members. *See* Compl., ECF No. 1. Glick filed an amended complaint in December 2022 alleging six causes of action against ThedaCare and its board of directors.[1] The main thrust of the second amended complaint is that ThedaCare breached its fiduciary duties under ERISA beginning in August 2014. The first three causes of action assert that ThedaCare breached its duty of prudence regarding recordkeeping and administrative fees (Count I), managed account service fees (Count II), and investment management fees (Count III). The last three causes of action assert that ThedaCare failed to adequately monitor other fiduciaries with respect to the plan's recordkeeping fees (Count IV), service fees (Count V), and investment fees (Count VI).

---

[1] For a more robust procedural history, see the court's prior report and recommendation, ECF No. 44.

2

ThedaCare has moved to dismiss the investment-fee claims (Counts III and VI) for lack of standing and all six claims for failure to state a claim upon which relief can be granted. *See* Defs.' Mot., ECF No. 50; Defs.' Mem., ECF No. 51. In response, Glick abandoned his investment-fee claims. *See* Pl.'s Resp. 1 n.1, ECF No. 57. ThedaCare's motion to dismiss the remaining claims is fully briefed and ready for resolution. *See* Defs.' Reply, ECF No. 58; Pl.'s Suppl. Br., ECF No. 68; Defs.' Suppl. Br. 69.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint must "allege[] facts that show the claim is 'plausible on its face.'" *Taha v. Int'l Bhd. of Teamsters, Local 781*, 947 F.3d 464, 469 (7th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Taha*, 947 F.3d at 469 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

When analyzing a motion to dismiss pursuant to Rule 12(b)(6), courts must "construe the complaint in the light most favorable to plaintiff, accept all well-pleaded facts as true, and draw reasonable inferences in plaintiff's favor." *Taha*, 947 F.3d at 469 (citing *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013)). However, courts "need not accept as true . . . unsupported conclusory factual allegations." *Divane v. Northwestern Univ.*, 953 F.3d 980, 987 (7th Cir. 2020) (quoting *Yeftich*, 722 F.3d at 915), *vacated*, *Hughes v. Northwestern Univ.*, 142 S. Ct. 737 (2022) ("*Hughes I*")). And courts may "ignore any facts alleged in the complaint that

3

undermine the plaintiff's claim." *Divane*, 953 F.3d at 987 (quoting *Tricontinental Indus. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007)).

"In putative ERISA class actions, Rule 12(b)(6) motions are an 'important mechanism for weeding out meritless claims.'" *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (quoting *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014)). "Courts apply a 'careful, context-sensitive scrutiny of a complaint's allegations' to 'divide the plausible sheep from the meritless goats.'" *Id.* "Because 'the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, [] courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise.'" *Albert*, 47 F.4th at 577 (quoting *Hughes I*, 142 S. Ct. at 742). As such, the Seventh Circuit has held that, "[w]hen claiming an ERISA violation, the plaintiff must plausibly allege action that was objectively unreasonable." *Divane*, 953 F.3d at 988 (citing *Amgen Inc. v. Harris*, 136 S. Ct. 758, 760 (2016)).

## DISCUSSION

Glick contends that ThedaCare breached its fiduciary duties concerning certain fees the plan paid. To state a breach of fiduciary duty claim under ERISA, "a plaintiff must plead '(1) that the defendant is a plan fiduciary; (2) that the defendant breached its fiduciary duty; and (3) that the breach resulted in harm to the plaintiff.'" *Albert*, 47 F.4th at 579 (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). ThedaCare does not dispute that the named defendants are plan fiduciaries under 29 U.S.C. § 1002(21) or that higher fees can sometimes harm plan participants. Rather, ThedaCare insists that Glick has failed to plausibly plead that the named defendants breached their duty of prudence and duty to monitor other fiduciaries.

4

I.  **Duty of Prudence Claims**

ERISA "requires plan fiduciaries to act prudently when managing an employee benefit plan." *Albert*, 47 F.4th at 578 (citing 29 U.S.C. § 1104(a)(1)(B)). A plan fiduciary must discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Hughes v. Northwestern Univ.*, 63 F.4th 615, 626 (7th Cir. 2023) ("*Hughes II*") (quoting 29 U.S.C. § 1104(a)(1)). "[T]he duty of prudence includes a continuing duty to monitor plan expenses and 'incur only costs that are reasonable in amount and appropriate' with respect to the services received." *Hughes II*, 63 F.4th at 631 (quoting *Tibble v. Edison Int'l*, 843 F.3d 1187, 1197 (9th Cir. 2016)).

Here, Glick asserts that ThedaCare breached its duty of prudence by authorizing the plan to pay unreasonably high fees for recordkeeping and administrative services and for the Managed Advice service.

A.  **Recordkeeping and administrative fees (Count I)**

Glick maintains that ThedaCare has incurred excessive recordkeeping fees and has failed to timely remove its longtime recordkeeper, Transamerica. He doesn't know what process ThedaCare used to select, retain, or determine the fees paid to Transamerica. Instead, Glick says we should infer an imprudent decision-making process from ThedaCare's failure to regularly solicit quotes or competitive bids from Transamerica and other recordkeepers and ThedaCare's failure to leverage its substantial bargaining power to negotiate a lower fee. *See* 2d Am. Compl. ¶¶ 29, 108.

5

To support this theory, Glick compares publicly available data for the ThedaCare plan with twelve allegedly comparable plans that are supposedly prudent when it comes to recordkeeping fees. The comparator plans have between about 4,000 to 14,000 participants, total assets ranging from about $200 million to $1.2 billion, and paid a total annual recordkeeping fee of $20 to $45 per plan participant:

**Comparable Plans' RKA Fees Based on Publicly Available Information from Form 5500**
(Price calculations are based on 2018 Form 5500 information or the most recent Form 5500 if 2018 is not available)

| Plan | Partici-pants | Assets | Total RKA Fee | Total RKA Fee /pp | Recordkeeper |
|---|---|---|---|---|---|
| The Boston Consulting Group, Inc. Employees' Profit Sharing Retirement Fund | 4,369 | $421,208,989 | $185,805 | $43 | Vanguard |
| Under Armour 401(K) Plan | 4,485 | $179,198,512 | $89,400 | $20 | T. Rowe Price |
| Smithfield Foods, Inc. Salaried 401(K) Plan | 6,149 | $500,178,777 | $278,907 | $45 | Great-West |
| Flowserve Corporation Retirement Savings Plan | 6,395 | $892,435,613 | $263,380 | $41 | T. Rowe Price |
| Bausch Health Companies Inc. Retirement Savings Plan | 8,902 | $904,717,349 | $322,496 | $36 | Fidelity |
| Children's Medical Center of Dallas Employee Savings Plan 403(B) | 9,356 | $349,335,673 | $337,416 | $36 | Fidelity |
| Ralph Lauren Corporation 401(K) Plan | 9,389 | $552,586,935 | $290,066 | $31 | T. Rowe Price |
| Vibra Healthcare Retirement Plan | 9,750 | $107,652,510 | $277,532 | $28 | Great-West |

| | | | | | |
|---|---|---|---|---|---|
| Republic National 401(K) Plan | 9,922 | $671,989,837 | $324,171 | $33 | Great-West |
| Southern California Permanente Medical Group Tax Savings Retirement Plan | 10,770 | $773,795,904 | $333,038 | $31 | Vanguard |
| Viacom 401(K) Plan | 12,196 | $1,249,874,734 | $376,314 | $31 | Great-West |
| Michelin Retirement Account Plan | 13,798 | $616,026,001 | $425,270 | $31 | Vanguard |

*Id.* ¶ 111. By contrast, from 2014 through 2022, the ThedaCare plan averaged about 8,000 participants, nearly $800 million in total assets, and a total annual recordkeeping fee of $97 per plan participant:

Total Recordkeeping and Administration (Total RKA) Fees

| | 2014 | 2015 | 2016 | 2017 | 2018 | 2019 | 2020 | 2021 | 2022 | Average |
|---|---|---|---|---|---|---|---|---|---|---|
| Partici-pants | 7,574 | 8,966 | 7,657 | 7,811 | 7,847 | 7,930 | 8,092 | 8,446 | 8,446 | 8,085 |
| Est. Total RKA Fees | $929,772 | $785,946 | $843,695 | $961,123 | $962,143 | $685,005 | $591,622 | $651,298 | $651,298 | $784,656 |
| Est. Total RKA Per Participant | $123 | $88 | $110 | $123 | $123 | $86 | $73 | $77 | $77 | $97 |

*Id.* ¶ 110. Based on this data, Glick alleges that "a hypothetical prudent plan fiduciary would have paid on average an effective annual [recordkeeping] fee of around $33 per participant, if not lower." *Id.* ¶ 117. According to Glick, the unreasonably excessive recordkeeping fees paid by the ThedaCare plan cost its participants millions of dollars. *See id.* ¶¶ 116–22.

ThedaCare argues that the Seventh Circuit's decision in *Albert* requires dismissal of Glick's recordkeeping claim. In *Albert*, the Seventh Circuit affirmed the dismissal of a similar recordkeeping claim that relied on a price comparison of fees charged to other plans. *See*

7

*Albert*, 47 F.4th at 579. The court first reiterated its prior holdings "that the cheapest investment option is not necessarily the one a prudent fiduciary would select," *id.* (citing *Loomis v. Exelon Corp.*, 658 F.3d 667, 670 (7th Cir. 2011), and "that a failure to regularly solicit quotes or competitive bids from service providers" does not, as a matter of law, breach the duty of prudence, *Albert*, 47 F.4th at 579 (citing *Divane*, 953 F.3d at 990–91). Because at the time *Hughes* was still pending on remand from the Supreme Court, the court looked elsewhere for guidance. It relied primarily on *Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022), a case in which the Sixth Circuit "held that an ERISA plaintiff failed to state a duty of prudence claim where the complaint 'failed to allege that the [recordkeeping] fees were excessive relative to the services rendered.'" *Albert*, 47 F.4th at 580 (quoting *Smith*, 37 F.4th at 1169). The Seventh Circuit determined that the complaint in its case did not provide "'the kind of context that could move this claim from possibility to plausibility' under *Twombly* and *Iqbal*." *Id.* Nevertheless, the court emphasized "that recordkeeping claims in a future case could survive the 'context-sensitive scrutiny of a complaint's allegations' courts perform on a motion to dismiss." *Albert*, 47 F.4th at 580 (quoting *Dudenhoeffer*, 573 U.S. at 425).

After the parties in our case briefed ThedaCare's motion to dismiss, the Seventh Circuit issued its decision in *Hughes II*. The court clarified the pleading standard for ERISA duty-of-prudence claims, explaining that "a plaintiff must plausibly allege fiduciary decisions outside a range of reasonableness." *Hughes II*, 63 F.4th at 630 (citing *Hughes I*, 142 S. Ct. at 742). "How wide that range of reasonableness is will depend on 'the circumstances . . . prevailing at the time the fiduciary acts.'" *Hughes II*, 63 F.4th at 630 (quoting *Dudenhoeffer*, 573 U.S. at 425). The court also explained that "[t]he discretion accorded to an ERISA fiduciary 'will necessarily be context specific.'" *Id.*

8

Applying that "newly formulated pleading standard," the *Hughes II* court reversed the dismissal of an excessive recordkeeping fees claim. *Hughes II*, 63 F.4th at 630–34. The court distinguished *Albert*, noting that the complaint in its case alleged that "the quality or type of recordkeeping services provided by competitor providers [were] comparable to that provided by" the plan's recordkeepers. *Hughes II*, 63 F.4th at 632. The court further noted that the complaint alleged that recordkeeping services for all "jumbo plans" are fungible and that the proposed alternative fee was reasonable "based on the services provided by existing recordkeepers and the Plans' features." *Id.* In other words, unlike the plaintiffs in *Albert*, the plaintiffs in *Hughes II* provided the required context to allege that their plan's recordkeeping fees "were excessive relative to the recordkeeping services rendered." *Id.* (citing *Smith*, 37 F.4th at 1169).

Like the complaint in *Hughes II*, the operative complaint here includes the allegations missing from the complaint in *Albert* that move Glick's recordkeeping claim from possible to plausible. Specifically, the second amended complaint alleges that Transamerica provided plan participants standardized recordkeeping and administrative services that all "mega plans"—those with over $500 million in assets—receive from their recordkeepers, including "things like website services, participant account maintenance, plan consulting, and call center staffing." *See* 2d Am. Compl. ¶¶ 24, 36–45, 62. It also alleges that recordkeepers for all mega plans provide more or less the same level and quality of service and that any minor variations do not materially affect the fees charged. *See id.* ¶¶ 36–69. Thus, according to the second amended complaint, the market for recordkeeping and administrative services is highly price-competitive for mega plans, such that plans with more participants generally can negotiate a lower per-participant rate. *See id.* Given these alleged facts, Glick asserts that the

9

ThedaCare plan's fees were excessive relative to the services received, as the comparator plans used recordkeepers that provided at least the same services for a third to half of the price. *See id.* ¶¶ 110–35.

Other courts within this circuit have found nearly identical allegations sufficient to survive a motion to dismiss. *See Mazza v. Pactiv Evergreen Servs.*, No. 22 C 5052, 2023 WL 3558156, 2023 U.S. Dist. LEXIS 86826 (N.D. Ill. May 18, 2023); *Tolomeo v. R.R. Donnelley & Sons, Inc.*, No. 20-cv-7158, 2023 WL 3455301, 2023 U.S. Dist. LEXIS 85022 (N.D. Ill. May 15, 2023); *Acosta v. Bd. of Trs.*, No. 22 C 1458, 2023 WL 2744556, 2023 U.S. Dist. LEXIS 56445 (N.D. Ill. Mar. 31, 2023); *Lucero v. Credit Union Ret. Plan Ass'n*, No. 22-cv-208-jdp, 2023 WL 2424787, 2023 U.S. Dist. LEXIS 40702 (W.D. Wis. Mar. 9, 2023); *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, 2022 U.S. Dist. LEXIS 175972 (N.D. Ill. Sept. 28, 2022); *but see Gaines v. BDO USA, LLP*, No. 22 C 1878, 2023 WL 2587811, 2023 U.S. Dist. LEXIS 47350 (N.D. Ill. Mar. 21, 2023); *Probst v. Eli Lilly & Co.*, No. 1:22-cv-01106-JMS-MKK, 2023 WL 1782611, 2023 U.S. Dist. LEXIS 19172 (S.D. Ind. Feb. 3, 2023).

ThedaCare attacks the strength of Glick's allegations on several grounds. First, it criticizes Glick for not describing the specific recordkeeping and administrative services performed by the ThedaCare plan and the comparator plans. In *Hughes II*, however, the Seventh Circuit clarified that level of specificity is not required at the pleading stage. The complaint in *Hughes II* alleged that there were "numerous recordkeepers in the marketplace who [were] *equally* capable of providing a high level of service to large defined contribution plans like the Plans." *Hughes II*, 63 F.4th at 632. That allegation, according to the court, suggested that the quality or type of recordkeeping services provided by other recordkeepers was comparable to that of the plan's recordkeepers. Likewise, the operative complaint in this

case alleges that other recordkeepers were providing the same level and quality of service to other mega plans as Transamerica provided to the ThedaCare plan. It also alleges that the plan received a standard bundle of recordkeeping services. No more is required under *Hughes II*.[2]

Second, ThedaCare contends that other allegations in the second amended complaint contradict the assertion that all mega plans receive materially identical recordkeeping and administrative services. According to ThedaCare, Glick admitted in his latest complaint that plans can negotiate to receive the same or better level and qualities of services from a recordkeeper, that some recordkeepers may differ in how they deliver recordkeeping services, and that some recordkeepers are more innovative than others. Defs.' Mem. at 12–14 (citing 2d Am. Compl. ¶¶ 47, 56, 99). ThedaCare seems to believe that it's implausible that all recordkeepers provide the exact same services. Maybe, but that's not what Glick asserts. Rather, the second amended complaint alleges that any differences in services have a negligible effect on the fees charged. None of the allegations cited by ThedaCare are inconsistent with recordkeeping services being commoditized, especially for large plans like the ThedaCare plan.

Finally, ThedaCare takes issue with Glick's chart comparing the ThedaCare plan's recordkeeping and administrative fees with the fees charged by other plans. ThedaCare faults Glick for not asserting that the plan's fees were above average and correctly points out that ERISA fiduciaries are not required to select the cheapest option. Glick, however, does not assert that the plan's fees were unreasonable merely because there exists other, cheaper

---

[2] The second amended complaint supports these factual allegations by citing to, among other sources, plan documents, Glick's own experience, and a stipulation offered in a similar ERISA fees case. *See* 2d Am. Compl. ¶¶ 43, 45, 55–58.

alternatives. Rather, the second amended complaint alleges that the plan didn't regularly solicit quotes or competitive bids, the plan failed to leverage its bargaining power to negotiate a lower fee, and other similarly sized plans received the same level of service for significantly less. Together those allegations support an inference that ThedaCare engaged in an unreasonable—and therefore imprudent—decision-making process (or lack of process) when it came to selecting, retaining, and paying Transamerica for its recordkeeping and administrative services.

ThedaCare also takes issue with Glick's math, arguing that he's comparing apples to oranges. For example, ThedaCare accuses Glick of including both direct and indirect compensation when calculating the fees it paid to Transamerica while the recordkeeping fees paid by the comparator plans include only direct compensation. In other words, ThedaCare accuses Glick of inconsistency about the numerator in his fee calculations. ThedaCare attempts to support this argument with excerpts from the Form 5500s for several of the comparator plans. *See* Defs.' Mem. at 18–19 (citing, e.g., Ex. B, ECF No. 52-2). Glick, on the other hand, insists that the full form shows that his methodology is reliable. *See* Pl.'s Resp. at 20–21 (citing Ex. 1, ECF No. 57-1).

It remains unclear how Glick came up with some of his numbers, particularly the total recordkeeping and administrative fees he says the ThedaCare plan paid Transamerica each year. If Glick had presented the same evidence in response to a summary judgment motion, I would grant the motion. However, the pleading stage is not the time to attack the source of a plaintiff's allegations. *See Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable."). Glick can show his work during discovery and future motion practice.

12

ThedaCare also argues that *Hughes II* is distinguishable because the Seventh Circuit relieved heavily on the allegation that the fiduciary in that case could have reduced its fees by consolidating to a single recordkeeper. Defs.' Suppl. Br. at 3 (citing *Hughes II*, 63 F.4th at 621–22, 631, 633). Consolidation, however, was not determinative in *Hughes II.* Indeed, the court explicitly said that the recordkeeping claim was "not limited to a failure to consolidate recordkeepers." *Hughes II*, 63 F.4th at 633. Likewise, in our case Glick asserts that ThedaCare failed to mitigate excessive recordkeeping fees in several ways. Those allegations are just barely enough to nudge his recordkeeping fees claim across the line from possibility to plausibility.

B.  **Managed account service fees (Count II)**

Glick maintains that ThedaCare also incurred excessive fees for the Managed Advice service offered by Transamerica.[3] *See* 2d Am. Comp. ¶¶ 70–87, 136–55. According to the second amended complaint, managed account service providers "generally offer the same basic service—initial and ongoing investment management of a 401(k) plan participant's account based on generally accepted industry methods." *Id.* ¶ 72 (quoting United States Government Accountability Office, *401(k) Plans: Improvements Can Be Made to Better Protect Participants in Managed Accounts*, at 14 (June 2014), *available at* https://www.gao.gov/assets/670/664391.pdf). Thus, to support his excessive-fee theory, Glick compares the service fees paid by Transamerica to the service fees paid by six "similarly situated plans for materially identical managed account services":

| Managed Account Service Fee Rates of Similarly-Situated Plans | Fee on 1st Tier | Fee on 2d Tier | Fee on 3d Tier |
|---|---|---|---|

---

[3] "In general, managed account services are investment services under which a participant pays a fee to have a managed account provider invest his or her account in a portfolio of preselected investment options." 2d Am. Compl. ¶ 71.

13

| | | | |
|---|---|---|---|
| ThedaCare "*Managed Advice* Fee" | 0.45% | N/A | N/A |
| Verso Retirement Savings Plan for Bargained Employees (2021) | 0.25% | N/A | N/A |
| AGFA Healthcare Corp. Employee Savings Plan (2018) | 0.40% | 0.30% | 0.20% |
| Caterpillar Sponsored 401(k) Plans (2016) | 0.40% | 0.30% | 0.20% |
| Citi Ret. Savings Plan (2015) | 0.35% | 0.30% | 0.25% |
| JC Penney 401(k) Savings Plan (2015) | 0.35% | 0.25% | 0.10% |
| Comcast Corp. Ret. Investment Plan (2019) | 0.00% | 0.30% | 0.20% |

2d Am. Compl. ¶ 141. Based on that comparison, Glick asserts that the ThedaCare plan paid higher fees for virtually identical services.

Glick's managed account service fees claim suffers the same fatal flaws the court identified concerning a materially indistinguishable claim Glick asserted in his first amended complaint. *See* R. & R. at 7–9. First, the second amended complaint does not contain any factual allegations showing that the comparator plans included in the chart are in fact similarly situated. Simply alleging that the plans are "similarly situated"—without listing any details about the number of participants or asset size—is not enough. *See Albert*, 47 F.4th at 582 (affirming the dismissal of an investment-advisor fee claim because the complaint failed to "provide any basis for comparison between the fees paid to [the plan's investment advisor] and fees paid to other service providers") (citation omitted).

Second, the evidence Glick relies upon to support his assertion that all managed account service providers offer the same services actually undermines Glick's assertion. That document indicates that, although managed account service providers generally offer the same basic service, they do vary in *how* they provide services. *See 401(k) Plans* at 14 (explaining that providers may "use different investment options, employ varying strategies to develop and adjust asset allocations for participants, incorporate varying types and amounts of

14

Case 1:20-cv-01236-WCG    Filed 07/20/23    Page 14 of 16    Document 72

participant information, and rebalance participant accounts at different intervals"). And the variance in that process may, in some cases, explain the difference in fees charged.

## II. Duty to Monitor Claims

In Counts IV and V, Glick asserts that ThedaCare breached its duty to monitor other fiduciaries with respect to recordkeeping and administrative service fees and managed account service fees, respectively. *See* 2d Am. Compl. ¶¶ 227–40. Glick concedes that his duty-to-monitor claims are wholly derivative of his duty-of-prudence claims. *See* Pl.'s Resp. at 23. Because I recommend the court dismiss Glick's managed account service fees duty-of-prudence claim, I recommend the service fees duty-to-monitor claim be dismissed as well. *See Albert*, 47 F.4th at 583 (citing *Rogers v. Baxter Int'l Inc.*, 710 F. Supp. 2d 722, 740 (N.D. Ill. 2010)). Glick, however, may pursue his recordkeeping fees duty-to-monitor claim.

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that the court **GRANT in part** and **DENY in part** the defendants' motion to dismiss plaintiff's second amended complaint, ECF No. 50. I recommend that Glick be allowed to proceed on his recordkeeping fees claims (Counts I and IV) but not his managed account service fees claims (Counts II and V) and his investment fees claims (Counts III and VI).

Under 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(2), and E.D. Wis. Gen. L. R. 72(c), written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this recommendation. The parties must file objections in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the district judge in writing.

Dated in Milwaukee, Wisconsin, this 20th day of July, 2023.

_____
STEPHEN C. DRIES
United States Magistrate Judge